**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LATASHA S.<br>Plaintiff<br>v. | :<br>:<br>: | CIVIL ACTION |
| FRANK BISIGNANO,<br>Commissioner of the Social Security Administration,<br>Defendant | :<br>:<br>:<br>:<br>: | NO. 26-2201 |

# MEMORANDUM

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE November 24, 2026

Latasha S. ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Plaintiff has filed a brief in support of her request for review, the Commissioner has responded to it, and Plaintiff has filed a reply. For the reasons set forth below, Plaintiff's request for review is denied.

## I. PROCEDURAL HISTORY[1]

On May 11, 2024, Plaintiff filed her claim for DIB and SSI. R. 10. Her claim was denied initially and upon reconsideration; hence, she requested a hearing. *Id.* On May 12, 2025, Plaintiff appeared for a telephonic hearing, before Suzette Yaung, Administrative Law Judge ("the ALJ"); Plaintiff, represented by an attorney and vocational expert Lori A. Cowan ("the VE"), testified at the hearing. R. 37-41. On May 22, 2025, the ALJ, using the sequential evaluation process ("SEP")

[1] The court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl. Br."), the Defendant's Response to Request for Review of Plaintiff ("Resp."), Plaintiff's Reply Brief ("Reply"), and the administrative record. ("R.").

for disability,[2] issued an unfavorable decision. R. 10-22. The Social Security Administration's Appeals Council denied review, on February 3, 2026. R. 1-3. Plaintiff presently seeks judicial review; the parties have consented to this court's jurisdiction, pursuant to 28 U.S.C. § 636(c)(1).

## II. FACTUAL BACKGROUND

### A. Personal History

Plaintiff, born on November 8, 1977, R. 42, was 47 years old at the time of the ALJ's decision. She has completed high school, is unmarried, has no children, and lives with her sister in her sister's apartment. R. 43, 45.

### B. Plaintiff's Testimony

At the May 12, 2025 administrative hearing, Plaintiff testified about her limitations. R. 42-63. She identified her most significant problems as being an inability to multitask, to walk normally, to climb stairs, to process information, and inability to write things down. R. 52-53.

---

[2] The Social Security Regulations provide the following five-step sequential evaluation for determining whether an adult claimant is disabled:

> 1. If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2. If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 3. If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
>
> 4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).
>
> 5. The Commissioner will determine whether, given the claimant's residual functional capacity, age, education, and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

Plaintiff's poor concentration precludes her completion of even one task at a time; speech aphasia, a common stroke residual, impairs her ability to speak effectively. R. 53.

During a typical day, Plaintiff eats pre-prepared, microwaveable meals and, in between meals, she sits in a recliner, with her feet elevated to waist level as her neurologist recommended. R. 54, 57. She occasionally walks around the apartment for exercise. R. 54. Plaintiff naps most days for approximately 30 minutes. R. 60. She is unable to dress herself; her sister secures her bra and fastens any buttons on her clothing. R. 54-55. Also, her sister drives her to appointments, grocery shops for the two of them and performs all household chores. R. 45, 55-56. Plaintiff occasionally visits friends and family. R. 56.

Plaintiff uses a cane and walker on a daily basis; the cane is necessary for her to safely climb stairs. R. 58. With a cane or walker, she is able to stand for 10 minutes at a time, she can walk for 10 minutes at a time and sit for 15 minutes at a time before needing to change position. R. 59. Plaintiff is able to lift and carry a gallon of milk. R. 60.

Plaintiff emphasized that her moyamoya disease will result in her death, because she will be unable to recover from the repeated strokes she will suffer. R. 62. She also noted that her constant leg pain and uncontrolled arms movements are uncorrectable results of the repeated strokes she has suffered. R. 62.

C. Vocational Testimony

The VE characterized Plaintiff's past home attendant position as a medium,[3] semi-skilled[4] position and her material handler position as semi-skilled and performed at the medium level. R.

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

[4] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties." 20 C.F.R. §§ 404.1568(b), 416.968(b). It is less complex than skilled work but more complex than unskilled work. *Id.* "A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." *Id.*

64. The ALJ asked the VE to consider a person of Plaintiff's age, education, work experience, limited to light[5] work, with the following limitations: frequently able to balance; occasionally able to climb, stoop, kneel, crouch and crawl; able to tolerate frequent exposure to humidity, wetness, pulmonary irritants, extreme cold, extreme heat; able to tolerate occasional exposure to vibration and hazards such as unprotected heights and open, moving parts. R. 64-65. The VE responded that this individual could not perform either of Plaintiff's past jobs, but could perform unskilled,[6] light jobs: (1) coffee shop attendant, 163,000 positions in the national economy; (2) cafeteria attendant, 28,700 positions in the national economy; and (3) cashier, 458,800 positions in the national economy. R. 65. Next, if the same person could only stand and walk for up to four hours each workday and never operate a motor vehicle, she could not perform even light work. R. 65. The VE was then asked to consider a person capable of only sedentary[7] work and needing occasional use of a cane to ambulate. R. 65-66. This person could perform three, alternative, unskilled jobs: (1) general office clerk, 651,500 positions in the national economy; (2) billing and posting clerk, 22,400 positions in the national economy; and (3) interviewer, 24,800 positions in the national economy. R. 66-67. The VE then described how she reached her estimates for job numbers in the national economy. R. 67-68.

Plaintiff's attorney first asked the VE to consider a person who needed a cane to balance and walk. R. 69. The VE responded that this individual could only perform sedentary work. R. 69. If a person required a walker, all work would be precluded. R. 69. Next, if the ALJ's

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[6] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength . . . [a] person does not gain work skills by doing unskilled jobs." 20 C.F.R. §§ 404.1568(a), 416.968(a).

[7] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking or standing is often necessary in carrying out job duties." 20 C.F.R. §§ 404.1567(a), 416.967(a).

hypothetical person could only occasionally finger and handle bilaterally, they could not perform any of the jobs the VE had identified. R. 69. Employers only tolerate employees being off-task 15% of the workday and only permit one unscheduled absence per month. R. 69. Next, if Exhibit 25F[8] was credible, the VE opined that the inability to sit, stand, and walk for a total of eight hours in a workday would preclude all competitive work. R. 69-70. Finally, the requirement listed in Exhibit 25F that the individual be allowed to elevate her legs to waist level at will precludes competitive work. R. 70.

## III. THE ALJ's FINDINGS

In her decision, the ALJ issued the following findings:

> 1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2028.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since March 6, 2024, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. [Plaintiff] has the following severe impairments: moyamoya disease, status post cerebrovascular accidents and left superficial temporal artery to middle cerebral artery bypass; hypertension; hyperlipidemia; diabetes; and obesity (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can frequently balance. She can occasionally climb, stoop, kneel, crouch, and crawl. She can tolerate frequent exposure to humidity,

---

[8] Exhibit 25F contains a May 2, 2025 questionnaire completed by Sahilly Reyes Esteves, M.D., Plaintiff's treating neurologist. The questionnaire is found at pages 5736 to 5740 of the administrative record. As noted below, Plaintiff relies heavily on the medical opinions contained in this questionnaire.

> wetness, pulmonary irritants, extreme cold, and extreme heat. She can tolerate occasional exposure to vibrations and hazards, such as unprotected heights and machinery with open moving parts.
>
> 6. [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> 7. [Plaintiff] was born on November 8, 1977, and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
>
> 8. [Plaintiff] has at least a high school education (20 CFR 404.1564 and 416.964).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is "not disabled," whether or not [she] has transferrable job skills (SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 404.1569, 404.1569a, 416.969, 416.969a).
>
> 11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from March 6, 2024, through the date of this decision (20 CFR 404.1520(g), 416.520(g)).

R. 12-13, 15-16, 21-22.

## IV. DISCUSSION

A. Standard of Review

Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed if they are supported by substantial evidence. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of

evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted). While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019), it may amount to less than an evidentiary preponderance. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ, and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). Indeed, the court is not permitted to weigh the record evidence itself. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B. Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially

demonstrate that a medically determinable impairment prevents her from returning to her past employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff can perform given her age, education, work experience and residual functional capacity. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C. Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ determined that, although Plaintiff could not perform her past relevant work, she could perform other light, unskilled jobs and, hence, was not disabled. R. 10-22. Plaintiff disputes the ALJ's decision, arguing that the ALJ improperly assessed her residual functional capacity ("RFC"), because the ALJ committed legal error when determining that the opinions of her treating neurologist, Sahilly Reyes-Estevez, M.D,. were unpersuasive Pl. Br. at 15-23. The Commissioner denies Plaintiff's arguments. Resp. at 1-8. This court finds that the ALJ complied with the governing regulations when she evaluated collectively the persuasiveness of Dr. Reyes-Estevez's numerous opinions, hence, it is impossible to find she committed legal error.

To determine whether a medical opinion is persuasive, the ALJ must consider explicitly the factors of supportability and consistency.[9] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability considers the objective medical evidence and explanations the medical source provides for his or her opinions. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency considers how compatible the source's opinion is with other medical and nonmedical evidence in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). When a medical source renders

[9] Other factors that may be relevant to determining persuasiveness are the source's relationship with the claimant, the source's specialization, and other factors. 20 C.F.R. §§ 404.1520c(c)(3)-(5), 416.920c(c)(3)-(5).

multiple opinions, the ALJ is permitted to address the source's opinions collectively, rather than individually. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). The Third Circuit has determined that the regulatory framework established by 20 C.F.R. §§ 404.1520c, 416.920c complies with the governing statute. *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024).

In a May 2, 2025 Questionnaire, Dr. Reyes-Estevez rendered dozens of opinions concerning Plaintiff's limitations resulting from her ischemic stroke and moyamoya disease.[10] R. 5736-40. Notably, the doctor opined that Plaintiff could sit, stand and walk for a total of less than two hours in a workday, R. 5737-38, would have to elevate her legs to waist level 25% to 50% of the workday, R. 5738, and could only finger and handle materials for 25% of the workday with the left hand and never with the right hand. R. 5739. The VE opined that the first two of these limitations would preclude all competitive employment. R. 70. The fingering and handling limitation would preclude the sedentary jobs the VE had identified. R. 69.

In her decision, the ALJ considered the above-listed disabling limitations, as well as many others rendered by Dr. Reyes-Estevez. R. 20. The ALJ found that the doctor's opinions, collectively, were unpersuasive, because they were inconsistent with other evidence in the record, which she had already summarized and which indicated that Plaintiff's limitations were much less pronounced. R. 20. The ALJ also noted that Dr. Reyes-Estevez had failed to provide support for her opinion that Plaintiff needed to elevate her legs while seated. R. 20.

It is clear that the ALJ properly applied the governing regulations, by explicitly considering supportability and consistency. When doing so, the ALJ referred back to the extensive review of Plaintiff's voluminous medical records that she had provided earlier in her decision. While the applicable regulations permit an ALJ to engage in a somewhat truncated analysis of medical

[10] Dr. Reyes-Estevez also rendered opinions in January 2025. However, Plaintiff's attorney did not use any of those opinions to pose questions to the VE. Hence, this court does not need to address them.

opinions, when a source provides multiple opinions, the Third Circuit has determined that the regulations comply with the governing statute. *Zaborowski*, 115 F.4th at 639. Hence, there is no basis for this court to find that the ALJ committed legal error when she deemed Dr. Reyes-Estevez's disabling opinions unpersuasive. Absent legal error in evaluating the doctor's opinion evidence, this court cannot find that the ALJ's decision lacked substantial evidence by omitting Dr. Reyes-Estevez's opinions from the RFC assessment.

Implementing and judgment orders follow.